IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATIONAL COALITION OF LATINO CLERGY, INC; CONLAMIC-OKLAHOMA; CHURCH EFICAZ; CHURCH PIEDRA ANGULAR; MEXICO LINDO RESTAURANTS; JOHN DOE ONE; JOHN DOE TWO; JOHN DOE THREE; JANE DOE FOUR; JOHN DOE FIVE; and JOHN DOE SIX, et al.<br><br>            Plaintiffs,<br><br>v.<br><br>BRAD HENRY, Governor of the State of Oklahoma, and DREW EDMONDSON, Attorney General of the State of Oklahoma.<br><br>            Defendants. | Case No. 07-CV-594-JHP |

## ORDER AND OPINION

Before the Court is the Court's *sua sponte* consideration of whether any named Plaintiff has standing to bring suit. Because the Court finds that no such standing exists, the case is DISMISSED without prejudice.

## BACKGROUND

On May 8, 2007, Oklahoma Governor Brad Henry signed into law House Bill 1804 ("HB 1804"). The bill is designed to combat the perceived illegal immigration[1] problems faced by the state

---

[1] The Court recognizes that a variety of different terms are used interchangeably with the term "illegal immigrant" (i.e., "illegal alien" and "undocumented alien"). The Court views them as interchangeable.

1

of Oklahoma. Although the bill the does not take effect until November 1, 2007, Plaintiffs filed the present lawsuit challenging its constitutionality on October 15, 2007. Plaintiffs' suit alleges the bill violates the United States Constitution, the Oklahoma Constitution, and federal law. Plaintiffs seek declaratory and injunctive relief.

The Court raises the issue of standing *sua sponte* and addresses that issue herein.

## DISCUSSION

Article III of the United States Constitution does not give litigants an absolute right to have their claims heard by an Article III court. The exercise of federal judicial power is, and always has been, predicated on the existence of a case or controversy. Therefore, litigants seeking to invoke the jurisdiction of a federal court must properly establish standing to bring suit. Standing is the threshold question in every federal case, and determines the very power of a court to entertain the suit before it. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Over the years the Supreme Court has established that the "irreducible constitutional minimum of standing" contains three elements: (1) the plaintiff must have suffered an "injury in fact," a concrete and particularized invasion of a legally protected interest which is actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted).

While the Supreme Court has recognized that a plaintiff "does not have to await the consummation of threatened injury to obtain preventative relief," *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923), a plaintiff seeking such preventative relief is not relieved of their burden

of establishing an "injury in fact" under *Lujan*'s first prong. The Court has consistently maintained that the "federal judicial power is to be exercised...only at the instance of one who is himself immediately harmed, or *immediately threatened with harm*, by the challenged action." *Poe v. Ullman*, 367 U.S. 497, 504 (1961) (emphasis added). *Lujan* is instructive as to what constitutes such "immediate" harm and the lesson of *Lujan* is clear: mere allegations that at some point in the future an injury might occur are not enough to establish standing. What is required is a more particularized allegation showing that an injury *will* occur at a certain time in the future.

In the present case, this Court is confronted with alleged injuries that fall into two general categories: 1) allegations of "actual" injuries already sustained as a result of HB 1804; and 2) allegations of "imminent" injuries that will be sustained when HB 1804 goes into effect on November 1, 2007. The first category of alleged injuries must be examined under the causation prong of the *Lujan* analysis, while the second category of alleged injuries must be examined under the "injury in fact" prong of the *Lujan* analysis. The Court applies the *Lujan* standing analysis to the injuries asserted by each Plaintiff and does so in turn.

**A. CONLAMIC-USA**

The National Coalition of Latino Clergy, Inc. ("CONLAMIC-USA") is identified as a Plaintiff in the caption of the case and in paragraph six of the complaint. (Compl. ¶ 6.) CONLAMIC-USA is not mentioned in the complaint again. No injury is alleged on the part of CONLAMIC-USA, nor is there allegation of injury to any of its members. In fact, other than a reference to its Oklahoma branch, the complaint makes no mention of CONLAMIC-USA's membership. Because CONLAMIC-USA has failed to allege it suffered or is threatened with any injury, or that any of its members suffered or are threatened with any injury, CONLAMIC-USA has no standing to bring suit.

3

**B. CONLAMIC-Oklahoma**

The Oklahoma branch of CONLAMIC-USA, CONLAMIC-Oklahoma, is identified as a Plaintiff in the caption of the case and in paragraph seven of the complaint. (Compl. ¶ 7.) CONLAMIC-Oklahoma is not mentioned in the complaint again. No injury is alleged on the part of CONLAMIC-Oklahoma, nor is there allegation of injury to any of its members. In fact, the complaint makes no mention of CONLAMIC-Oklahoma's membership. Because CONLAMIC-Oklahoma has failed to allege it suffered or is threatened with any injury, or that any of its members suffered or are threatened with any injury, CONLAMIC-Oklahoma has no standing to bring suit.

**C. Church Eficaz**

Church Eficaz alleges two distinct injuries. First, Church Eficaz alleges that HB 1804 has caused a decline in its church membership:

> Before the passage of HB 1804 Church Eficaz had approximately 200 members. Its membership has now dwindled to approximately 100 members, as a result of the fear caused by HB 1804's passage[.]

(Compl. ¶ 9.) This alleged injury cannot be causally related to any provision of HB 1804 as HB 1804 does not become law until November 1, 2007. It is impossible for Church Eficaz to causally link any provision of HB 1804 to declining membership because at the time of the alleged injury HB 1804 had no legal effect. Without such a causal connection the alleged injury is deficient for purposes of a standing analysis.

Second, Church Eficaz alleges fear of prosecution under the criminal provision of HB 1804:

> Church Eficaz fears they will be subject to numerous felonies if they continue to transport individuals, who happen to be undocumented, after November 1, 2007.

(Compl. ¶ 12.) Church Eficaz, however, makes no claim that any member of its church is in fact an illegal that would subject the church to prosecution under the criminal statute. To the contrary, the

church makes a point of insisting that it does not inquire into the citizenship of its members. (Compl. ¶ 10.) The Court therefore, finds this alleged injury to be the hypothetical sort prohibited under *Lujan.* Were the church to simply admit that a single church member was in fact illegal, that the church intended to keep transporting its members, and that the church feared that if it transported its illegal member it would be subject to prosecution under HB 1804, the church would perhaps have standing. But the church instead makes the conjectural argument that it is *possible* that a member might be illegal, and it is *possible* that an illegal member (were they to exist) might be transported in a church vehicle, thus opening up the church to *possible* prosecution under HB 1804. The Court is not willing to engage in such a strained hypothetical. This injury, as alleged by the church, does not survive a *Lujan* analysis.

Because the injuries alleged by Church Eficaz are speculative at best, the church has no standing to bring suit.

**D. Church Piedra Angular**

Church Piedra Angular alleges two injuries identical to those alleged by Church Eficaz. The Courts finds the analysis it applied to Church Eficaz's claim to be applicable here, and for the reasons referenced above, finds that Church Piedra Angular has no standing to bring suit.

**E. Mexico Lindo Restaurants[2]**

---

[2] The Complaint contains passing mention of "Plaintiff Jose Ramirez" (Compl. ¶ 23, 25.), but no mention of Jose Ramirez as a plaintiff is found in the caption of the case nor in the opening paragraph of the complaint listing each plaintiff. The Court, therefore, does not

Mexico Lindo Restaurants alleges three injuries. First, Mexico Lindo alleges loss of revenue:

> Plaintiff Mexico Lindo Restaurant has lost significant revenue since the announcement of HB 1804. Plaintiff Ramirez estimates that he has lost approximately 40% of his business as a result of HB 1804.

(Compl. ¶ 25.) For the same reasons that the churchs' claims of lost congregation fail, so does the restaurants' claim of lost revenue. This alleged injury cannot possibly be causally related to any provision of HB 1804 as HB 1804 does not become law until November 1, 2007.Without such a causal connection the injury is deficient for purposes of a standing analysis.

Second, Mexico Lindo alleges a threatened administrative burden:

> Plaintiff Mexico Lindo Restaurants has hired individuals to work in their business. If Plaintiff does not participate in the 'federal status verification system' he will not have access to state contracts according to HB1804 [sic].

(Compl. ¶ 26.) The provision of HB 1804 that Mexico Lindo references is not a mandatory provision. That provision simply says that if an employer wants to be eligible for state contracts, the employer must comply with certain provisions. Here, Mexico Lindo makes no allegation that it has at any point in its existence entered into a contract with the state of Oklahoma; it makes no allegation that it currently has state contracts that it will lose on November 1, 2007 if it does not comply with this provision of HB 1804; and further makes no allegation that it is currently bidding for, or even has any intention of entering into, state contracts. In the absence of any such allegation, Mexico Lindo's claim is purely conjectural. As pled, Mexico Lindo's second claim is not "concrete and particularized" enough to support standing. *See Lujan*, 504 U.S. at 560.

---

recognize Ramirez as a plaintiff. Because Ramirez is identified as the "representative of Plaintiff Mexico Lindo Restaurants," (Compl. ¶ 23), Ramirez's claims would be identical to those of the restaurants. Therefore, even were the Court to recognize Ramirez as a plaintiff, the Court's standing analysis would apply with equal force to both Ramirez and the restaurants.

Third, Mexico Lindo alleges the threat of civil liability:

> If Plaintiff Mexico Lindo Restaurant fires an employee for theft or any other legitimate reason, he will be subject to a claim by the fired employee under § 7 of HB 1804 if one of his employees happens to be undocumented.

(Compl. ¶ 27.) This alleged injury is equally conjectural. Mexico Lindo makes no allegation that it currently has within its employ any employee that would trigger the provisions of § 7 should it fire an employee on or after November 1, 2007. In the absence of such an allegation, Mexico Lindo's claim is simply too speculative to support standing.

Because none of the injuries alleged by Mexico Lindo Restaurants survive a *Lujan* analysis, the restaurant has no standing to bring suit.

**F. John Doe One**

John Doe One alleges two injuries. First, John Doe One alleges the threat of self-incrimination:

> Plaintiff John Doe One will not sign a document, required by Section 8 of HB 1804, attesting to his lawful status, as this violates his rights against self-incrimination**.**

(Compl. ¶ 30.) Presumably John Doe One is alleging that he will be injured at some time after November 1, 2007, because § 8 of HB 1804 requires applicants for certain government programs to sign an affidavit attesting to the applicant's lawful status.[3] John Doe One's claim, however, ignores the fact that § 8 is not mandatory, and he is under no obligation to sign any affidavit. The obligation only arises should John Doe One seek to obtain certain types of benefits and services from the state of Oklahoma. John Doe One has made no allegation that he has ever received any benefits or services covered by § 8; he makes no allegation that he currently receives benefits or

---

[3]The Court is also not convinced that the signing of an affidavit asserting *legal* status would amount to self-incrimination.

7

services covered by § 8; and he makes no allegation that he has any intention of ever seeking any services or benefits covered by § 8 of HB 1804. In the absence of any such allegation, John Doe One's claim is pure speculation.

Second, John Doe One alleges threat of eviction:

> Plaintiffs John Does 1,2,3, and 4 [sic] reasonably fear that, if HB 1804 is enforced, they will be evicted from their homes as the landlord may not want to rent to them since renting an apartment or house may be considered "harboring" an "undocumented person" and thus subject the landlord to a possible felony.

(Compl. ¶ 38.) The deficiency here is best highlighted by contrasting this alleged injury with the injury alleged in *Lozano v. Hazleton,* 496 F. Supp. 2d 477 (M.D. Pa. 2007). In *Hazelton,* the Court found standing, but based upon the concrete nature of the alleged injury:

> We find that the anonymous plaintiffs have standing to challenge Hazleton's ordinances. They have suffered concrete and particularized injuries which are actual or imminent. *These plaintiffs have either been forced from the property which they had rented or had been told by their landlords that they would have to be evicted due to the ordinances.*

*Id.* at 497 (emphasis added). The distinction is obvious, in *Hazelton*, the plaintiffs had alleged the concrete injury needed to support standing. In the present case, there is no allegation that any of the John Does have been evicted, or have been told by their landlord that they will be evicted on November 1, 2007. The alleged injury is simply conjecture, unsupported by any factual allegations that support a finding of "imminent" injury for purposes of standing.

Because neither of the injuries alleged by John Doe One survives a *Lujan* analysis, John Doe One has no standing to bring suit.

**G. John Doe Two**

John Doe Two's only alleged injury is the claim shared with John Doe One. That is, John Doe Two fears eviction by his landlord. (Compl. ¶ 38.) For the same reasons stated in response to

8

John Doe One's claim, this claim fails and John Doe Two has no standing to bring suit.

**H. John Doe Three**

John Doe Three alleges two injuries. First, John Doe Three claims that HB 1804 caused his driver's license to not be renewed:

> Plaintiff John Doe 3 applied for a driver's license with the State of Oklahoma and the license was denied. Plaintiff was not given any due process opportunities to contest the denial of his license. Plaintiff John Doe 3 is otherwise qualified to hold an Oklhoma [sic] driver's license except for his undocumented status.

(Compl. ¶ 35.) Once again, the Court is confronted with a Plaintiff attempting to causally connect an alleged injury to a provision of HB 1804 that it not yet effective. There is simply no connection between this alleged injury and HB 1804. As of this date, HB 1804 gives no state agency the authority to deny *anything* based upon immigration status.

John Doe Three's second alleged injury is the claim shared with John Doe's One and Two. That is, John Doe Three fears eviction by his landlord. (Compl. ¶ 38.) For the same reasons as articulated above, this claim fails.

Because neither of the injuries alleged by John Doe Two survives a *Lujan* analysis, John Doe Three has no standing to bring suit.

**I. Jane Doe Four**

Presuming that Jane Doe Four is the "John Doe 4" reference in paragraph 38 of the complaint, Jane Doe Four alleges only a single injury and that injury is the injury shared with John Does One, Two and Three**.** That is, Jane Doe four fears eviction by her landlord. (Compl. ¶ 38.) For the same reasons as articulated above, this claim fails and Jane Doe Four has no standing to bring suit.

**J. John Doe Five**

John Doe Five alleges only a single injury:

> Plaintiff John Doe Five is undocumented and has an Oklahoma driver's license. Plaintiff John Doe [Five] believes HB 1804 will cause him to lose his driver's license.

(Compl. ¶ 36.) John Doe Five's allegation, as pleaded, raises absolutely no threat of "imminent" injury. HB 1804 simply requires any agency issuing or renewing a license to inquire into the immigration status of an applicant. Since John Doe Five already has a driver's license, his fear is that his license will not be renewed at some point in the future. Under Oklahoma law, a driver license is valid for four years from the date of issuance. *See* Okla. Stat. tit. 47 § 6-101(j). As far as the Court knows, John Doe Five will not be faced with the prospect of renewing his license until the year 2011. If John Doe Five had alleged his license would have to be renewed shortly after November 1, 2007, he would likely have asserted a concrete injury. But by failing to plead an imminent injury, the Court is left with the possibility that the injury alleged will not occur until several years, and legislative sessions, into the future. Such uncertainty simply does not suffice for purposes of standing.

Because the injury alleged by John Doe One does not survive a *Lujan* analysis, John Doe Five has no standing to bring suit.

**K. John Doe Six**

John Doe Six alleges only a single injury:

> Plaintiff John Doe 6 is currently incarcerated with criminal and immigration charges and believes he has been denied bail because HB 1804 unlawfully denies bail to

foreign nationals who have not been lawfully admitted.

(Compl. ¶ 37.) John Doe Six is correct HB 1804 contains a provision relating to the granting of bail to illegal aliens, but John Doe Six ignores the fact that HB 1804 is not currently the law and thus could not have authorized nor caused the denial of his bail. Thus, John Doe Six's alleged injury cannot be causally traced to HB 1804.

Because the injury alleged by John Doe Six does not survive a *Lujan* analysis, John Doe Six has no standing to bring suit.

## **CONCLUSION**

The Court has no doubt that Plaintiffs fervently believe in the unconstitutionality of HB 1804. Standing, however, "is not measured by the intensity of the litigant's interest or the fervor of his advocacy. [T]hat concrete adverseness which sharpens the presentation of issues is the anticipated consequence of proceedings commenced by one who has been injured in fact; it is not a permissible substitute for the showing of injury itself." *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 486 (1982). The Court's holding today does not close the courthouse door to those wishing to challenge the constitutional soundness of HB 1804. The Court's holding is simply the recognition of the lesson learned through cases like *Valley Forge*: a proper constitutional vetting of any law cannot be achieved without the existence of a plaintiff that has actually been injured by the challenged law. While a constitutional vetting of HB 1804 would serve the interest of all parties to this litigation, the interest of the public would best be served by a sharpening of the issues presented prior to such a vetting. Such a sharpening can only be achieved through a suit brought by Plaintiffs with well-defined injuries causally connected to HB 1804.

Because no named Plaintiff has Article III standing to bring suit, the Court is without jurisdiction to hear this case. The case is therefore DISMISSED without prejudice.

IT IS SO ORDERED.

*James H. Payne*
United States District Judge
Northern District of Oklahoma